318

Argued November 19, 1958, reargued February 4, affirmed April 4, petition for rehearing denied May 13, 1959.

## BENSON ET AL v. STENGER

337 P. 2d 338

*Clifford E. Nelson* argued the cause for appellants. On the brief were Phelps, Burdick & Nelson, Portland.

*Herbert B. Galton* argued the cause for respondent. On the brief were Black, Kendall & Fain, and Edward L. Fitzgibbon, all of Portland.

ROSSMAN, J.

This is an appeal by the two plaintiffs who are partners and who do business under the name of Tom Benson Glass Co. from a judgment which the circuit court entered in favor of the defendant upon his motion for a directed verdict.

The plaintiffs present four assignments of error but stress only the first two. The first reads:

"The Court on examination of witness Paul B. Landry erred in sustaining objections to the following questions."

The second challenges the ruling which directed the verdict in defendant's favor.

The complaint alleges that between May 19, 1954, and August 30, 1954, the plaintiffs "at the special instance and request of the defendant sold and delivered to defendant certain window glass and mirrors" of the reasonable value of $1,730. It alleges that no part of that sum has been paid. The answer denies the averments. At the times mentioned in the complaint one Burton Newton, who, as a witness for the plaintiffs, described himself as a "building contractor," was constructing a dwelling house for the defendant

upon a cost plus basis. No written instrument evidenced the agreement between the defendant and Newton. An architect by the name of Gerald G. Scott drew the plans and specifications. The glass mentioned in the complaint became the windows of the house and the mirrors were installed in the bathrooms. The alleged value of the materials, $1,730, is not contested, and it is conceded that all of the material entered the structure. The defendant has not paid the plaintiff for the material, but the unchallenged evidence shows that he paid Newton.

■ We will now consider the first assignment of error which is based upon rulings that were made when the plaintiffs sought to show that the defendant through a purported telephone call to Paul B. Landry, plaintiffs' manager, made a request concerning the glass or its installation. It appears that Newton had solicited bids from other glass dealers in addition to the plaintiffs and that the latter's bid was the lowest. Landry testified that some time after he had given the plaintiffs' bid to Newton he received a telephone call from some one with whose voice he was not familiar, and a day or two later delivered the glass. The identity of the caller was not established and Landry was unacquainted with the defendant's voice. No effort was made to reveal the answer that Landry would have given had he been permitted to answer the question, and no offer of proof was made to show that the question to which the objection was sustained would have developed any fact material to the issues on trial. It is impossible to infer that the plaintiffs sought, through the question to which the objection was sustained, to prove that the defendant accepted the plaintiffs' bid for Landry swore that it was Newton who accepted their bid. Landry had conducted all

of the negotiations pertaining to the glass. As a witness for the plaintiffs under examination by their counsel Landry gave the following testimony:

"Q Well, you had your negotiations with Burt Newton, he was the one that accepted the bid?
"A He is the one."

Thus, it was Newton who accepted the plaintiffs' bid. The plaintiffs do not claim that Landry misspoke himself. To the contrary, their brief states:

"* * * However, the plaintiff submits that under the evidence in this case the jury could have found from a review of all of the evidence that Mr. Newton ordered the glass * * *."

In view of that situation, we are unable to conceive of any material answer which Landry could have made to the question in controversy. In the absence of an offer of proof this assignment of error reveals no merit.

■ The second assignment of error, as we have indicated, challenges the trial judge's ruling which directed the verdict for the defendant. During the trial the plaintifffs' position appears to have been that (1) when the construction work got under way and until it was two-thirds completed the relationship between the defendant and Newton was that of owner and independent contractor and (2) when the structure was two-thirds finished the relationship was changed into that of owner-employee and Newton agreed no longer to take a percentage of the cost of construction. We add that when the house was two-thirds completed Newton discovered that the cost of construction would exceed his preliminary estimate of $40,000 by $20,000 and so told the defendant. According to the plaintiffs, they did not submit their bid to Newton until the

purported change in relationship between Newton and the defendant was effected. The defendant denies that any change in his relationship to Newton was ever made except he concedes that when it developed that the cost of construction would exceed the preliminary estimate by $20,000 Newton agreed that he would no longer make a percentage surcharge as compensation for his work.

The question presented by the second assignment of error is this: does the record contain substantial evidence showing that when the glass transaction occurred Newton was the defendant's employee or agent? If the relationship between the defendant and Newton was that of owner and independent contractor the trial judge committed no error when he made the challenged ruling. The plaintiffs had the burden of proof of showing that the relationship was that of owner-employee; and unless the record contains substantial evidence showing that Newton was the defendant's employee or agent, and not an independent contractor, the challenged ruling must be affirmed.

At least three members of this court have read the transcript of evidence and examined the exhibits. The study thus given the record was conducted with great care. The case has been argued before this court twice, the second time before the entire bench. Since the issue presented by the second assignment of error calls for virtually nothing but an examination of the evidence, we find it unnecessary to detail herein the contents of the transcript.

The undisputed testimony indicates that Newton agreed to construct for the defendant a dwelling house which the parties had clearly in mind. It also indicates that the defendant agreed to pay Newton the cost of

construction plus a surcharge. The house was actually built, and according to the defendant's unchallenged testimony no deviation from the original design was made. The defendant's unchallenged testimony shows that he paid Newton in full for the cost of construction, including all charges for the glass and Newton's surcharge. Our study of the record has satisfied us that the defendant retained no control over Newton, the award of subcontracts and the purchase of material. At least no control was retained which conflicted with Newton's undertaking to build the house according to his own ways and methods. There is nothing in the record which even intimates that the defendant suggested to Newton the hiring of this or that carpenter, the letting of any subcontract or the place where any material should be purchased. In short, Newton agreed to build the house which the parties had in mind as an independent contractor.

All payments to mechanics, subcontractors and material dealers were made by Newton with the possible exception of nine payments which we will presently mention. Newton, after paying the mechanics, material dealers and subcontractors, was reimbursed by the defendant. At the outset reimbursement was made by a Portland bank which had made to the defendant a mortgage loan. The bank retained in its possession the mortgage money and disbursed it to Newton upon approved vouchers. When construction was two-thirds completed the mortgage money was exhausted and thereupon the defendant paid Newton directly upon presentation to him of approved vouchers. We mentioned that there were possibly nine exceptions. Those nine payments were made a month and a half or more after Newton had done his last work. The record affords no indication as to whether those nine individuals

had worked upon the house. One of the nine is the Portland Trust Bank. We do not assume that that institution performed any work upon the house. Another is a nursery concern which may have supplied some shrubbery after completion of the home. We have no knowledge as to the nature of the business in which the other individuals are engaged.

So far as the record indicates, all of the mechanics, subcontractors and material dealers dealt with Newton. The defendant through impatience may have requested the plaintiffs to make prompt installation of the glass. There is no evidence that he otherwise uttered a single word to any mechanic, material dealer or subcontractor. The record indicates that Newton was in business as an independent contractor and that in that capacity he built the defendant's home. He furnished his own crew of workmen and purchased in his own name the materials necessary for the discharge of his undertaking.

The fact that Newton's compensation was the cost of construction plus a surcharge does not, under the above facts, authorize a finding that he was the defendant's agent or employee. *Kruse v. Revelson,* 115 Ohio St 594, 155 NE 137, 55 ALR 289 and annotation at page 291. *Economy Pumps v. F. W. Woolworth Co.,* 220 NC 499, 17 SE2d 639, quoted with approval the following from *Carleton v. Foundry & Machine Products Co.,* 199 Mich 148, 165 NW 816, 19 ALR 1141:.

> "We may take judicial notice that the arrangement of paying cost, plus a percentage as a contract price for a completed job, is growing in favor, and is becoming a common plan adopted by contractors in place of a lump sum payment. * * * The change is only in the method of computing payment. There is no change in the relation of the parties from that which exists where the pay-

ment is a lump sum. The manner of computing payment for the completed job is not controlling; a change in this regard does not convert an independent contractor into an employe."

The second assignment of error lacks merit.

The third and fourth assignments of error are concerned with the contention of the plaintiffs that when the glass transaction took place Newton was the defendant's agent and not an independent contractor. However, it is admitted in the reply brief and by a similar admission which was made upon oral argument that since these assignments of error are based upon a motion for a new trial filed by the plaintiffs, they cannot be considered upon appeal. The motion for a new trial was based solely upon matters which occurred during the trial and, therefore, the order which denied it was not appealable.

The above disposes, adversely to the plaintiffs, of all the assignments of error.

Having found no error, it follows that the challenged judgment is affirmed.

PERRY and SLOAN, JJ., concur.

LUSK, J., specially concurring.

██ I assume that an inference could be drawn that one or two of the nine items referred to in the opinion of the court were for material supplied in connection with the contract between Newton and the defendant. But evidence of the payment directly by the defendant of some bills of materialmen would not, without more, suffice to establish or permit an inference to be drawn that Newton was an agent rather than an independent contractor. A similar question arose in *Kruse v. Revelson,* 115 Ohio St 594, 155 NE 137, 55 ALR 289.

There, the amount agreed to be paid the contractor for the construction of a building was the cost of material and labor plus $800. Some payments were made by the owner to sub-contractors on the order of the principal contractor, and the court held that that fact did not "distinguish the contract from the character of contracts that paid to the principal contractor upon estimates." Here, the only indication of the reason for the direct payments was that Newton had become financially involved. He was unable to pay, or at least had not paid, bills which he himself had contracted. The defendant's payment of these bills for him did not make Newton the defendant's agent.

Apart from the foregoing, I concur in the opinion of the court.

PERRY and SLOAN, JJ., concur in the foregoing opinion.

O'CONNELL, J., dissenting.

I think that there was sufficient evidence in this case from which the jury properly could have concluded that an agency relation existed between the defendant and Burton Newton.

There is evidence that Newton had contracted to construct the house for the defendant on a cost-plus basis but, as the majority opinion states, there was no written contract memorializing this alleged contract. When the house was about two-thirds completed, which was sometime in May, 1954, Newton informed the defendant that the house would cost approximately $20,000 more than the original estimate of $40,253.55. Newton testified that at this conference he agreed to finish the house without further compensation for his own services.

It is undisputed that Newton acted in some capacity for the defendant in connection with construction of the house beginning in February or March of 1954. The plaintiffs contend that Newton was an agent for the defendant in contracting for the purchase of the glass; the defendant takes the position that Newton was an independent contractor.

Prior to construction, Newton prepared and submitted a "Contractor's Estimate" to the bank with which the defendant had negotiated for a loan. This estimate of the cost of labor and materials for the construction of the house totalling $40,253.55 included the following item:

"Tom Benson Co. _____$1,200
Mirrors included above"

At the foot of the "Contractor's Estimate" Newton certified that the estimates listed were based upon "* * * contracts let or bids for the said job whenever possible * * *." In the contractor's estimate Newton described himself as a "general contractor." Plaintiffs' counsel referred to Newton as the defendant's "contractor" in the course of the trial, and Newton himself stated that he was a contractor when he was asked to describe his occupation. He testified that he was the "general contractor" in constructing the defendant's house. However, he also testified that he did not consider himself as the general contractor in connection with all the work in constructing the house.

The bills for the glass were sent to Newton and not to the defendant. Newton testified that he submitted to the defendant "copies of everything" including the bids and bills for material. During the month of August, 1954 the defendant personally made payments for items, some of which at least would normally be in-

volved in the construction of a house. Plaintiffs' manager testified that Newton accepted the bid for the glass. The foregoing is a brief summary of the pertinent facts.

I think that there was sufficient evidence in this case from which the jury properly could have concluded that a principal-agency relationship existed between the defendant and Burton Newton. The fact that Newton was engaged in the general contracting business and was referred to as a general contractor by the various persons involved in this case is not controlling upon the question as to Newton's *legal* relationship with the defendant. It is not always clear whether counsel and witnesses used the word contractor to describe Newton's occupation or to describe his legal relationship to the defendant.

Whether Newton was or was not defendant's agent in dealing with the plaintiffs is to be arrived at by determining the manner in which Newton was employed to carry out the purchase of the materials furnished by the plaintiffs.

It is possible for the owner to employ either an independent contractor or an agent to perform part or all of the acts necessary to construct a house, including the purchase of materials. If the employee is without power to represent the principal contractually he is an independent contractor; if he has such power, he is an agent. Which of these relationships created in a particular case will be found by applying whatever tests we have for determining these respective relationships.

We are familiar with the test of control which is used to mark the difference between an independent contractor and a servant for the purpose of determining the employer's liability in tort. We say that if

the employee's physical conduct in the performances of his service is subject to his employer's control, the employee is a servant. If this type of control is lacking the employee is an independent contractor. But we are not concerned in this case with the defendant's liability in tort and the test of control is not apposite except insofar as it will reveal the intent of the parties with respect to Newton's authority to represent the defendant contractually. The fact that the plaintiffs submitted bids to Newton and billed him for materials and otherwise dealt with him as if he were the purchaser of the materials does not in itself establish that Newton was not an agent for the defendant. It is a familiar principle of law that a principal is bound by a contract entered into by his agent acting within his authority, unless there is an agreement to the contrary. 1 Restatement, Agency 375, § 147. And the fact that the third person is satisfied with the agent's credit is not conclusive evidence that the principal is not a party to the contract. Ibid., comment "a". Further, merely because Newton was an independent contractor in that he was free from the defendant's control in the execution of the plans for the work of erecting the house (and for that reason the defendant was insulated from tort liability) does not mean that Newton could not be an agent with respect to the purchase of materials. This possibility of a dual relationship was recognized by the trial judge in a colloquy with counsel. Referring to Newton, he stated, "He said he was the general contractor to do all the work, but was he a general contractor [independent contractor] to furnish the material and pay for it * * *. It all depends on the terms of the contract." The idea is stated in *Cowles v. J. C. Mardis Co.*, 192 Iowa 890, 181 NW 872, 884, as follows:

"The cases hold that there may be a dual character, or relation, in some cases, without necessarily creating a repugnacy or inconsistency; that as to some parts of the work a party may be a contractor, and yet a mere agent or employee as to other work. * * *"

Cf, *Hann v. Handy,* 189 Or 32, 217 P2d 763 (1950).

There was no written contract between Newton and defendant describing the nature of Newton's authority or responsibility and there was very little evidence of the details of the oral agreement between the parties. Certainly there was not enough evidence to find as a matter of law that Newton was an independent contractor and not an agent. To determine the nature of Newton's authority it is necessary to look at the manner in which the parties acted in connection with the purchase of the materials. It is not necessary to find evidence which convinces us that an agency relation existed; we need find only such evidence as the jury could accept as sufficient to prove that relation. I believe that there is such evidence. As already pointed out, there was no written contract between Newton and the defendant. The defendant testified that there was a firm bid for the amount of $40,253.55 which was the total amount appearing at the foot of the estimate. Newton testified to the contrary and his testimony seems far more consistent with the other facts relating to the manner in which the estimated cost of the house was arrived at, and the ultimate cost of the completed house. There were no separate specifications of the architect, the details having been noted on the drawings themselves. Apparently not even the plans for the completed house were crystallized at the time Newton undertook the job. It is possible, of course, that even though Newton did not have a firm

contract to construct the house he, nevertheless, was not employed to contract for materials on behalf of the defendant. But there is other evidence, which if accepted by the jury, would show that the defendant was exercising a continued surveillance over the purchase of materials used in the house, including the glass. The plaintiffs introduced a memorandum in the defendant's own handwriting dated August 15, 1954, which reads as follows:

"Personally from Dr. Stenger
Paid 8/15/54

| | | |
|---|---:|---:|
| "Cedar Mill Nursey [sic] | 500 | 00 |
| "Portland Trust Bank | 500 | 00 |
| "Schnitzer | 100 | 00 |
| "Black top Paying [sic] | 100 | 00 |
| "Johnson & Johnson | 100 | 00 |
| "McCrar & Co | 100 | 00 |
| "Bobs Electric | 100 | 00 |
| "W. L. Prid | 100 | 00 |
| "Colton tile | 100 | 00 |
| | $1700 | 00" |

Newton testified that "The doctor [defendant] told me that he had paid these amounts that are listed on here." He further testified that these payments "didn't go through me"; in other words, with respect to the payment of some of the items which were purchased, the defendant was dealing directly with the materialmen. It was not established that the indebtedness for these items was incurred in connection with the construction of the defendant's house, or that they were necessarily included in the alleged contract between the defendant and Newton, but reasonable men might establish such a connection and the jury was entitled to consider the evidence.

The majority select two items from the memorandum, one of which is a payment to a nursery concern "which may have supplied some shrubbery after the completion of the home." Of course, it is just as reasonable to assume that it was a payment for shrubbery supplied before the completion of the home. The court goes on to say that "we have no knowledge as to the nature of the business in which the other individuals are engaged." It would not be unreasonable for the jury to assume from the listing of such items as Bob's Electric, Colton Tile and Blacktop paving that these goods or services were supplied in connection with the construction of the defendant's house. The same process of reasoning is used by the majority in concluding that because the Cedar Mill Nursery appears on the list the payment to it may have been for shrubbery supplied to Stenger for the new house. It goes on to assume that the shrubs may have been supplied after the construction of the house without any evidence upon which to support the assumption except the date of the memorandum. It is to be noted that the memorandum was introduced into evidence by the plaintiffs. The memorandum had been given to Newton by the defendant. If the items listed in the memorandum had nothing to do with the construction of the house as the majority opinion suggests, it is difficult to understand why the defendant gave the memorandum to Newton.

Newton also stated that he submitted the bills to the defendant and was reimbursed for the amounts expended by him. He said, "I did the work and the doctor paid the bills." According to Newton he "made it a practice on the job to give the doctor copies of everything." Not only did the defendant participate in a continuing way in making disbursements as the con-

struction of the house proceeded, but more significantly, he exercised continuing scrutiny of the bids which were submitted. When Newton was asked what he did with the bids for the glass he replied, "I turned them in to Dr. Stenger." Further evidence of the defendant's direct activity and control in dealing with the materials is the testimony of Newton relating to the actual installation of the glass. The testimony was as follows:

"Q Now did you order the glass put into the house?
"A No, sir, I didn't.
＊　＊　＊　＊　＊

"Q Who did?
"A Dr. Stenger.
"Q How do you know that to be a fact?
"A He told me so."

When it was learned that the house would cost approximately $20,000 more than the original estimate, Newton agreed to finish the house without compensation for his work on the house from that time on. Newton stated that, "It was after this agreement that I had any negotiations with Tom Benson." The agreement to act without further compensation, together with the evidence that the bids and invoices were being submitted to the defendant, and the evidence that the defendant was personally participating in directing the installation of the materials, could have been regarded by the jury as an assumption of control by the defendant constituting Newton the agent in contracting for those materials.

There is no exact formula by which a court or a jury can determine whether a person has acted as an agent or as an independent contractor. To say that the distinction depends upon the degree of control

which is reserved by the employer simply invites a further inquiry as to the factors which must be found to establish the amount of control necessary to characterize the relation as one of agency. We say that an agent is employed to represent the principal contractually. An independent contractor may enter into contracts with third persons which affect his employer's rights or liabilities, but these rights and liabilities arise out of the contract between the employer and his employee, not out of the contract between the employer and third persons. An agency exists only if it is found that the employee has been authorized to alter the legal relations between the employer, his principal and third persons. If we express this idea in terms of control we would say that the employer must exercise such control over his employee as will indicate that the employee was dealing with third persons on behalf of the employer.

If, in the instant case, a person other than a building contractor has been employed to purchase materials under the same circumstances as those which existed here, it would seem clear that the employee would be regarded as an agent. The case presents additional difficulties because the employee was in the general contracting business. His conduct in dealing with the plaintiffs and other materialmen is equivocal—it may point to either relationship. But there is sufficient evidence in this case from which a jury could make a choice and decide that an agency existed. First to be noted is the fact that the arrangement between the defendant and Newton could be considered by the jury as a cost-plus contract. It is to be contrasted with a contract calling for the payment of a set price. In the latter case the employer contracts for a product, the price of which is not affected by the employee's bar-

gaining for materials which go into it. But in the cost-plus contract the employee bargains for the employer in the sense that if there is a rise or fall in the price of materials or if more or less materials are needed, the employer benefits or suffers from the change, as the case may be. In this sense the employer participates in the contract in a substantial way and the employee acts only incidentally as a conduit to effect payment. For this reason it would not be unreasonable to regard the mere existence of a cost-plus contract as raising an inference of agency. But cf., *Carruth v. Valley Ready-Mix Concrete Co.*, Tex Civ App (1949) 221 SW2d 584. But it is not necessary to go that far in the present case. Assuming that under a cost-plus contract the employer can bargain in such a way as to obtain immunity from contract liability with materialmen, the jury could decide from the facts recited above that the defendant had not made such a bargain in this case. It must be remembered that there was no written contract between the defendant and Newton and there was no other evidence that unequivocally established that Newton was employed as an independent contractor in the construction of the house. The situation is essentially the same as it was in *Charles R. McCormick Lumber Co. v. O'Brien et al,* 90 Cal App 776, 266 P 594 (1928) where the court said:

"One rendering services for another under the so-called percentage plan might or might not be an independent contractor, depending upon the circumstances of the individual case. In the case now before us there was no written contract, and there is an 'absence of any express terms affirming or negating the power of control and direction.' It was therefore the duty of the trial court to draw reasonable inferences from the surrounding circumstances to determine who had the right to control

the means of doing the work.  *  *  *" 90 Cal App 776, 781, 266 P 594, 596.

In that case the court, in holding that the employer was liable for the cost of the materials, said:

"*  *  *  A finding that Essery was an independent contractor would necessarily involve holding that O'Brien had no right to purchase any of the material, and that Essery had the absolute right to determine where each article of the material used should be purchased. In view of all the circumstances, it cannot be said that the trial court was not justified in holding that Essery was the agent of O'Brien rather than an independent contractor." 90 Cal App 776, 781, 266 P 594, 597.

If we applied that test to the present case the trial judge should not have directed a verdict because there was ample evidence from which the jury could infer that Newton did not have "the absolute right to determine where each article of the material used should be purchased." If there was such an absolute right it is difficult to explain why Newton submitted the bids to the defendant.

In *North Carolina Lumber Co. v. Spear Motor Co.,* 192 NC 377, 135 SE 115 (1926) the plaintiff recovered the purchase price of lumber furnished by him to a contractor who was employed by the defendant owner to remodel the defendant's building. The written contract between the contractor and the defendant read, in part, as follows:

"The contractor shall order all materials, furnish all construction equipment  *  *  * and labor *  *  * which may be necessary to properly remodel or rebuild the property  *  *  * in accordance with such plans and specific instructions as may be furnished by the owner.  *  *  * the owner shall pay to the contractor  *  *  * the total cost

of the work plus ten per cent. (10%). Said payment to be made in the following manner:

"The weekly pay roll for all labor shall be submitted to the owner   *   *   *   and the owner shall immediately pay to the contractor the full amount of said pay roll.

"On or about the 1st of each   *   *   *   month, the contractor shall submit to the owner all invoices for materials   *   *   *   and the owner shall immediately pay to the contractor   *   *   *   the full amount of the aforesaid invoices and bills." 192 NC 377, 378, 379, 135 SE 115, 116.

The written contract set out above is essentially a description of the manner in which the defendant and Newton dealt in the present case. The court held:

"Under the contract   *   *   *   which was in writing, and unambiguous in its terms, it must be held as a matter of law that the relationship between them was that of master and servant, or principal and agent, and not of owner and independent contractor." 192 NC 377, 382, 135 SE 115, 117.

There are other cases which support the plaintiffs' contention that the case should have been submitted to the jury. See *Cowles v. J. C. Mardis Co.,* supra; *Patent Scaffolding Co. v. Roosevelt Apartment,* 171 Wash 507, 18 P2d 857 (1933); *Kesler Const. Co. v. Dixson Holding Corp.,* 207 NC 1, 175 SE 843 (1934).

In the present case Newton testified on cross examination, as follows:

"Q Mr. Newton, did you at any time consider yourself other than the general contractor in connection with all the work, that is contractor's work?
"A Yes, sir.

"Q You considered yourself otherwise?
"A Yes, sir."

The jury was entitled to find that Newton was what he said he thought he was.

I think that the majority has gone beyond the court's legitimate function of deciding whether there was sufficient evidence to go to the jury; it has usurped the function of the jury by weighing the evidence and deciding that it was insufficient to support the plaintiffs' claim.

The judgment should be reversed and the case remanded for a new trial.

McAllister, C. J. and Warner, J., concur in this dissent.